IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN E. DANNENBERG,

   Plaintiff,

v.

WARDEN ROBERT L. AYERS, Jr.,

   Defendant.

_____/

**No. C 09-0832 RS**

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND IN PART**

## I. INTRODUCTION

  This section 1983 action springs from the charged arena of parole for serious criminal offenders and the interplay between the executive and judicial branches of state government on that issue. In 1986, plaintiff John Dannenberg was convicted of second degree murder of his wife, and was sentenced to prison for an indeterminate term of 15 years to life. In 2005, the Board of Parole Hearings ("the Board") found Dannenberg suitable for parole and scheduled a date for his release. Governor Arnold Schwarzenegger, exercising his review power under the California Penal Code, reversed that finding. On December 3, 2007, California's Sixth District Court of Appeal issued a

final decision granting Dannenberg's petition for habeas corpus and reinstating the determination made by the Board.

Dannenberg was not released on parole until January 31, 2009, nearly 14 months later. In the interim, his case was pending for review before the California Supreme Court, and then was transferred back to the Sixth District for further consideration in light of intervening Supreme Court precedent. His eventual release came only after the Sixth District issued a second decision reaffirming its prior conclusion that Governor Schwarzenegger had lacked a sufficient basis to overturn the Board.

In this action, brought under 42 U.S.C § 1983, Dannenberg contends he was wrongfully imprisoned by defendants at all times after the Sixth District first granted his habeas petition. Dannenberg's claim that his federal constitutional rights were violated, however, rests entirely on his assertion that state law mandated his release, not on any broader constitutional principle. Because the California Supreme Court specifically rejected Dannenberg's arguments that he was entitled under state law to be released during the pendency of the review, his claim in this Court based on false imprisonment fails as a matter of law. Even assuming Dannenberg is correct that the California Supreme Court erred in its analysis, under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to revisit the issue in the guise of a suit for damages.

Dannenberg also advances the claim that his continued incarceration in the face of the release of others similarly situated violated equal protection. While defendants do not contend this claim is similarly foreclosed by the state Supreme Court's ruling, they argue it is pleaded in conclusory and insufficient terms. Dannenberg responds with a request for leave to amend to state additional facts, which will be granted.

Finally, Dannenberg's attempt to hold the named defendants personally liable fails for lack of sufficient allegations showing that they each acted to prevent his release or had an affirmative duty to ensure it. Accordingly, the motion to dismiss will be granted, but with leave to amend as to the equal protection claim only.

## II. BACKGROUND

1. *State Habeas Proceedings*

Dannenberg was convicted was convicted of killing his wife in a domestic dispute. As noted above, the Board found Dannenberg eligible for parole in 2005, after he had served some nineteen years in prison, but the Governor overruled that decision. On November 16, 2007, the Sixth District issued an opinion granting Dannenberg's petition for habeas corpus on grounds that the Governor's decision to reverse was not supported by any evidence. The court, accordingly, reinstated the Board's determination.

The state Attorney General then apparently filed a motion with the Sixth District to stay the effect of the opinion pending California Supreme Court review, and Dannenberg moved to have the Sixth District declare the decision final immediately. On December 3, 2007, the Sixth District issued an order modifying its opinion to include language that "[t]his opinion shall be final immediately with regard to this court."

Dannenberg contends that as of the time the modified opinion issued on December 3, 2007, the authorities were obligated to release him on parole, as the original date set by the Board had passed. At the time, the Attorney General agreed with Dannenberg's view of the legal effect of the Sixth District's opinion, as evidenced by the fact that on December 7, 2007, he filed a petition for review with the California Supreme Court, which included a request for "an immediate stay of the Court of Appeal's order requiring the immediate release of John Dannenberg from prison."

The California Supreme Court did not immediately act on the stay request. Dannenberg filed his own application with the court seeking an order to show cause why the authorities should not be held in contempt for failing to release him as directed by the Sixth District. Then, on January 23, 2008, the California Supreme Court issued an order denying both the Attorney General's stay request and Dannenberg's request for an order to show cause re contempt. The January 23, 2008 order stated that a stay was "unnecessary on the grounds that the remittitur will not issue until the matter is final as to this court."

The Supreme Court's January 23, 2008 order was apparently precipitated by a filing by the Attorney General that specifically suggested that the stay could be denied as unnecessary, despite his prior position that absent a stay, Dannenberg would have to be released. The Attorney General's filing relied on *Ng v. Superior Court*, 4 Cal.4th 29 (1992) and Cal. Rules of Court 8.272 to support the contention that a stay was not necessary (both citations were adopted by the court in the January 23, 2008 order).

Dannenberg thereafter filed both a motion for reconsideration and then a separate *habeas* petition urging the California Supreme Court to accept his argument that *Ng* was inapposite because it involved a writ of mandate, not a writ of *habeas corpus.* Dannenberg argued that his release was required under California Penal Code §1506, which he contended specifically applies to *habeas* petitions, and that no rule of court can take precedence over a statute. The court denied both Dannenberg's motion for reconsideration and his *habeas* petition on this issue without substantive comment.

In February of 2008, the California Supreme Court granted the petition for review, but deferred briefing or other action pending its consideration of two other cases involving a similar issue. In October of 2008, the matter was transferred back to the Sixth District, with directions to reconsider in light of the opinions the California Supreme Court had by then issued in the two other cases. Upon reconsideration, on January 23, 2009, the Sixth District again concluded that the Board's decision to release Dannenberg should be reinstated, and it again made its opinion final immediately upon filing. Approximately one week later, on January 31, 2009, Dannenberg was released on parole.

Although the Sixth District docket sheet submitted by defendants indicates a petition for review was filed in the California Supreme Court, defendants contend that the Attorney General did not seek review of the Sixth District's 2009 decision. On April 22, 2009, the Supreme Court ordered the Sixth District's opinion to be published, and declined to review the decision on its own motion. On April 30, 2009, the Sixth District issued its remittitur in the matter.

Dannenberg's complaint avers that his continued incarceration after December 3, 2007 was at all times wrongful, but alternatively argues the same illegality as to each sub-period of time, i.e., December 3-7, 2007 (from when the Sixth District ruled until the stay was sought); December 7, 2007-January 13, 2008 (from when the stay was sought until the court acted on it); and January 13, 2008-January 31, 2009 (from when the stay was denied as "unnecessary" until Dannenberg's release).

The complaint advances several claims for relief under 42 U.S.C § 1983 and state law, all of which rest on Dannenberg's two basic theories that: (1) it was a violation of his rights to keep him in prison after the Sixth District first reinstated the decision of the Board, and/or (2) it violated his *equal protection* rights to treat him differently than others similarly situated who were released.

2. *Proceedings in this Court*

As originally briefed, Defendants' motion to dismiss was premised on three basic arguments: (1) the Eleventh Amendment bars the claims against defendants, who are all state officials acting in official capacities; (2) despite the Attorney General's belief at the time that the first decision of the Sixth District required Dannenberg's immediate release, in fact no obligation to release him arose until a remittitur issued; and (3) Dannenberg's claims based on an alleged denial of equal protection are conclusory and not sufficiently pleaded. Upon review of the parties' briefing, the Court issued an order continuing the hearing date and requesting that the parties file supplemental briefs addressing certain specific issues.

In apparent response to the order for supplemental briefing, the parties reached a stipulation for dismissal of all "official capacity" claims against the defendants. Defendants acknowledge, therefore, that the Eleventh Amendment no longer presents an issue in this proceeding. Instead the question is only whether plaintiff has alleged sufficient facts to impose *personal* liability on any or all of the named defendants.

The second basis for the motion to dismiss has also evolved. Defendants initially argued, in essence, that the Sixth District's first decision had never created an obligation to release Dannenberg

immediately, and that because the opinion was subsequently vacated, Dannenberg cannot claim any rights arising from it now.[1]  Defendants contended that the fact that the Attorney General "wrongly believed" there had been an obligation to release Dannenberg immediately was "irrelevant" and did not preclude defendants from taking a different position in these proceedings.

In their supplemental briefing, defendants have retreated from attempting to show that there is no valid argument that Dannenberg should have been released upon issuance of the first Sixth District opinion.  Instead, defendants now stress that even assuming the California Supreme Court committed legal error in ruling that a stay was "unnecessary," jurisdictional principles preclude Dannenberg from seeking redress in this Court for that error.

### III.  DISCUSSION

#### A.  Effect of the first decision of the Sixth District

The threshold issue for Dannenberg's wrongful imprisonment claim is whether or not the first decision by the Sixth District granting his petition for habeas corpus and reinstating the decision of the Board gave rise to an immediate obligation to release him on parole.  The Sixth District phrased its disposition as follows: "Dannenberg's petition is granted. The Governor's decision is vacated, and the Board's decision is reinstated. This opinion shall be final immediately with regard to this court."  There is no dispute that at the time the Sixth District's opinion issued, the parole date set by the Board had passed.  It is plain that at the time, the Attorney General understood this was sufficient to create an *immediate* obligation to release Dannenberg, unless a stay were granted.

Furthermore, despite having taken a position in the initial briefing on this motion that the Attorney General was mistaken in believing there to have been an immediate obligation to release Dannenberg, defendants have offered no persuasive argument as to why Dannenberg's analysis of

---

[1]  Defendants also argued that even if they had failed to comply with an operative state court decision requiring Dannenberg's release, that would not constitute a federal civil rights violation, and would instead be remediable only through state court processes such as contempt proceedings.

California Penal Code § 1506 might be flawed. That section provides for a stay of an order of this nature by either the court rendering the decision or by the reviewing court only "upon application by the people" and in the discretion of the court, "upon such conditions as it deems just." See *People v. Huff*, 46 Cal.App.3d 361, 365 (1975) ("The effect of section 1506 [is] . . . if an appeal is taken and a request for stay is denied or no request for stay is made, then the appeal has no effect on the order unless and until the order is reversed.") Nor have defendants responded to Dannenberg's argument that *People v. Ng* is inapplicable and that Cal. Rules of Court 8.272 cannot trump the Penal Code.

Accordingly, it appears likely that the better reading of California law is that the Sixth District decision *should* have given rise to an immediate obligation to release Dannenberg. The ruling of the California Supreme Court in Dannenberg's case, however, cannot simply be ignored. When squarely presented with the question of whether Dannenberg had an existing right to be released—both by the Attorney General's stay petition and by Dannenberg's request for an OSC—the court found a stay to be unnecessary, citing authority for the proposition that until a remittitur issues, no final decision exists. Moreover, the California Supreme Court *twice* thereafter rejected the precise arguments Dannenberg makes here, when it denied both his motion for reconsideration and his *habeas* petition on this point.[2]

In neither his original briefing nor his supplemental briefing does Dannenberg suggest that this Court has jurisdiction to override the California Supreme Court's determination of whether he had a right to immediate release under California law, even if there is an argument that California law should be construed differently. Indeed, no such jurisdiction is available. The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Reusser v. Wachovia Bank*, 525 F.3d 855, 859 (9th Cir. 2008) (citation and quotations omitted); see also *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923). The Ninth Circuit has recognized that the "clearest case for dismissal based on the *Rooker-Feldman* doctrine

---

[2] It is true, however, that the motion for reconsideration, the *habeas* petition, or both, may have been rejected for procedural or other prudential reasons not going to the merits of the argument.

7

occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Reusser*, 525 F.3d at 859.

Here, while Dannenberg has not cast his claim as *directly* seeking relief from a wrongful state court decision, his wrongful imprisonment claim *depends* on the existent of error by the California Supreme Court in finding Dannenberg not entitled to immediate release even in the absence of a stay. As such, this Court is "in essence being called upon to review the state court decision." *Id.* That it cannot do.

Finally, although Dannenberg does not contend this Court can revisit the California Supreme Court's decision, he strenuously argues that the January 23, 2008 order denying a stay as unnecessary cannot serve to insulate defendants from liability for failing to release him prior to that date. This Court's order requesting further briefing raised this very possibility; i.e. even if defendants were entitled to rely on the order to continue to hold Dannenberg thereafter, it might not vitiate his claims for wrongful imprisonment in the earlier "sub-periods" set out in his complaint.

Upon further consideration, it is apparent that the January 23, 2008 order precludes all of Dannenberg's wrongful imprisonment claims, regardless of the time period at issue. The order did not create a right to hold Dannenberg in prison as of the date it issued. Rather, the California Supreme Court in effect ruled, rightly or wrongly, that the Sixth District's initial decision had *not* created any immediate obligation to release Dannenberg. To be sure, until the California Supreme Court so ruled, the authorities were acting at their personal peril by continuing to hold Dannenberg. Had the California Supreme Court denied a stay on the merits, Dannenberg might very well now hold a claim for wrongful imprisonment.[3] Once the California Supreme Court effectively found that no right to immediate parole had ever arisen, however, any potential to pursue a wrongful imprisonment claim ceased to exist. Accordingly, Dannenberg's claims based on alleged wrongful imprisonment will be dismissed, without leave to amend.

---

[3] Subject, of course, to a resolution in his favor of his further contention that mere *application* for a stay does not permit continued detention.

B. Equal protection

Defendants concede that the January 23, 2008 order of the California Supreme Court does not preclude Dannenberg from pursuing a separate constitutional claim that he was denied equal protection. Defendants argue, however, that the complaint only pleads such a claim in conclusory terms, with insufficient allegations of fact. Dannenberg's briefing sets out additional factual matter regarding other persons who he contends were similarly situated to him but who were released on parole pending Supreme Court review of their cases. Dannenberg prays leave to amend to include such matter in his complaint.

Dannenberg appears to be relying primarily on the cases of two other persons, Sandra Lawrence and Peter Cooper, both of whom were released on parole after appellate courts granted their habeas petitions.[4] In Lawrence's case, the appellate court stated, "[t]he Governor's decision to reverse the Board's grant of parole to Sandra Davis Lawrence is vacated, the Board's parole release order is reinstated and *it is ordered she be released forthwith*." *In re Lawrence*, review granted, previously published at: 150 Cal.App.4th 1511 (emphasis added). Similarly, in Cooper's case, the court expressly stated "[t]he Board is ordered to release Cooper." *In re Cooper*, review granted, previously published at: 153 Cal.App.4th 1043.

In Dannenberg's case, while the court's statement that its decision was to be made final immediately may have implied an intention that he be released forthwith (absent a stay), the Court stopped short of so ordering. Defendants seize on this distinction to argue that Dannenberg simply was not "similarly situated" to Lawrence or Cooper. While there is some appeal to this argument, particularly with respect to Lawrence, it rings somewhat hollow in light of the fact that at the time the Sixth District issued its ruling, the Attorney General was on record as understanding it to require Dannenberg's immediate release just as much as the somewhat more explicit language of the other cases.[5]

---

[4] There was some suggestion by counsel at the hearing that Dannenberg may be able to cite other cases as well.

[5] The context of the Sixth District's ruling is also relevant. The opinion was modified on December 3, 2007 to declare it was effective immediately after an express request by the Attorney

9

On this record, the Court cannot say with certainty that Dannenberg will be unable to plead sufficient facts to state a claim for violation of his equal protection rights. Accordingly, the equal protection claims will be dismissed, but he will be given leave to amend to state additional facts in the nature of those he identified in his opposition and at the hearing as being potentially available to support his claim.

C. <u>Individual liability</u>

Any amended complaint must also address the additional defect in the current pleading that Dannenberg has failed to allege facts showing that any or all of the named defendants personally acted—or failed to act when under a duty to do so—with respect to the unequal treatment of which he complains. For example, as noted in the order requesting supplemental briefing, the complaint plainly alleges Governor Schwarzenegger's role in overriding the Board's ruling in the first instance, but omits any indication he played a part in the decision to continue holding Dannenberg after the Sixth District reinstated the Board's decision. As to the members of the Board, the complaint alleges that they in fact *ordered* Dannenberg's release and that the Sixth District reinstated that order. It is unclear what more they could or should have done.[6]

In response to the request for further briefing, Dannenberg argued that all of the individual defendants are personally liable because he made written demand on each of them that he be released forthwith after the Sixth District's first decision was made final. Those demands, however, may have served to put defendants on *notice* that Dannenberg was still being held, but they could

---

General that its effect be stayed pending Supreme Court review. The implication that the Sixth District was thereby directing Dannenberg's release further erodes any distinction between his case and that of Lawrence or Cooper.

[6] At oral argument Dannenberg cited California Penal Code §3040 for the proposition that power to grant parole is vested in the Board. That may be, but it does not change the fact that the Board *did* grant parole. Dannenberg has not alleged facts showing that the Board member defendants played any part in the decision that was apparently made by someone not to carry out the Board's decision after it had been reinstated by the Sixth District.

10

No. C 09-0832 RS
ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND IN PART

not in and of themselves create a *duty* to take action on the part of any defendant who did not otherwise have a legal obligation to take affirmative steps to secure Dannenberg's release.

In short, as to each defendant named in any amended complaint, Dannenberg must allege facts showing either (1) that the defendant personally participated in the decision to treat him differently than other similarly situated persons, or (2) that the defendant had both the personal authority and responsibility under state law to ensure his equal treatment, but failed to act. Mere involvement in, or responsibility for, one or more aspects of the general parole process is insufficient.

## IV. CONCLUSION

The motion to dismiss the claims based on alleged wrongful imprisonment is granted, without leave to amend. The motion to dismiss the claims based on equal protection is granted, with leave to amend, both for failure to allege sufficient facts to support the claims generally, and for failure to state sufficient facts to support each defendant's liability. Any amended complaint shall be filed within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 02/10/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE