**\*\*E-filed 07/23/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JOHN E. DANNENBERG

     Plaintiff,

v.

WARDEN ROBERT L. AYERS, JR., et al.,

     Defendants
_____/

No. C 09-0832 RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

After serving approximately 19 years in prison for manslaughter, plaintiff John E. Dannenberg was granted parole by the Board of Parole Hearings ("the Board"). Governor Arnold Schwarzenegger then exercised his review power under the California Penal Code and reversed the Board's decision. In December of 2007, California's Sixth District Court of Appeal issued a final decision granting Dannenberg's petition for habeas corpus and reinstating the determination made by the Board. Dannenberg, however, was not released on parole for another 14 months, while further review of his habeas petition was pending, first in the California Supreme Court and then again in the Sixth District after the matter was re-transferred to that court for further consideration in light of intervening decisions in similar cases.

In this action, Dannenberg presents a compelling argument that under a better interpretation of California law, he was entitled to immediate release upon the Sixth District's initial decision, the Attorney General not having obtained a stay from either the Sixth District itself, or from the California Supreme Court. As explained in this Court's order granting defendants' initial motion to dismiss, however, when the California Supreme Court denied the Attorney General's stay application as "unnecessary," it effectively ruled that the Sixth District's initial decision did *not* give rise to an immediate right to release, and under *Rooker-Feldman* doctrine[1] that determination is not reviewable here.

As a result, this Court previously dismissed Dannenberg's claims based on alleged unlawful imprisonment, without leave to amend. Because defendants conceded that the California Supreme Court's ruling did not categorically preclude Dannenberg's claim based on denial of equal protection, the Court granted Dannenberg leave to amend with respect to that claim, advising him that he needed to allege (1) sufficient non-conclusory facts to support his equal protection claim, and (2) sufficient facts to show how each named defendant "personally participated in the decision to treat him differently than other similarly situated persons, or  . . . had both the personal authority and responsibility under state law to ensure his equal treatment, but failed to act."

Dannenberg's Second Amended Complaint includes additional factual averments explaining both how he believes he received unequal treatment under the law, and why he contends each of the named defendants is responsible. Nevertheless, the facts alleged, together with matters subject to judicial notice, reveal that Dannenberg's supposed differential treatment arose from the decision of the California Supreme Court that left his case in a different procedural posture than those of the other prisoners who he contends were "similarly situated," and not from the actions or inactions of defendants.

If Dannenberg is correct that the California Supreme Court misinterpreted California law, then his incarceration for an additional fourteen months beyond the time he should have been

---

[1] See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923).

released was an injustice. It is not, however, a matter subject to a remedy in this Court. The complaint will be dismissed without leave to amend.

## II. BACKGROUND

The general background of this action has been set forth in prior orders and will not be repeated here. The factual averments of the Second Amended Complaint differs from its predecessor in the following respects: (1) as to each individual defendant, Dannenberg has described, with citations to statutes in some instances, the defendant's legal responsibilities in the parole process, and that each defendant was put on written notice by Dannenberg's counsel of his contention that he was being held unlawfully, (2) Dannenberg has now identified four other prisoners who he contends were similarly situated to him in that appellate courts granted their *habeas* petitions after the Governor had overturned the Board's grant of parole—Sarah Lawrence, Peter Cooper, Bradford Titone, and Edward Gozy. Dannenberg asserts, and court records subject to judicial notice reveal, that each of those prisoners were released on parole after the appellate courts had ruled, and while further challenges to the appellate decisions were still pending in the California Supreme Court.

## III. DISCUSSION

A. <u>Dannenberg did not receive unequal treatment *from defendants* and/or there was a rational basis to treat him differently</u>

The Equal Protection Clause, "guarantees equal laws, not equal results." *McQueary v. Blodgett*, 942 F.2d 829, 835 (9th Cir. 1991) (quoting *Personnel Adm'r v. Feeney*, 442 U.S. 256, 273 (1979). Here, the facts alleged and those subject to judicial notice show that:

1. Dannenberg and the four other prisoners were all serving indeterminate life sentences.
2. In all five instances, the Board granted parole.
3. In all five instances, the Governor overruled the Board's decisions.

4. In all five instances, the appellate courts granted *habeas* relief (or upheld trial court *habeas* grants).

5. In all five instances, the state officials sought to have the appellate decisions stayed, pending further review.

6. In the cases of Lawrence, Cooper, and Titone, both the appellate courts and the California Supreme Court promptly denied the various stay requests.  See Defendants' Request for Judicial Notice Exhibits 5-9; Second Amended Complaint ¶¶ 27, 29.[2]  In the case of Gozy, the appellate court promptly denied a request to stay the effect of the trial court's grant of habeas; the matter apparently did not reach the California Supreme Court.  See Defendants' Request for Judicial Notice Exhibit 4; Second Amended Complaint ¶¶ 32.

7. In Dannenberg's case, unlike the others, the California Supreme Court did *not* act expeditiously either to grant or to deny the stay request.  Instead, some six weeks after the request was filed, the court denied it as "unnecessary," stating that the matter would not become final until the remittitur issued.

Under these circumstances, Dannenberg has failed to plead facts showing he was subjected to improper unequal treatment by defendants.  Rather, it is manifestly apparent that his continued incarceration during further review of his habeas petition resulted from the California Supreme Court's decision to treat his case differently than it did those of Lawrence, Cooper, and Titone.  As set out in the prior order, even assuming that the California Supreme Court committed legal error, it is beyond the purview of this Court to revisit that issue in this proceeding.[3]

---

[2] The complaint does not expressly allege that Cooper's request for a stay was denied by the Supreme Court, but Dannenberg does not dispute that fact.

[3] Dannenberg makes much of the fact that the Attorney General "invited" the supposed legal error by submitting a brief stating that the stay could be denied as unnecessary.  Dannenberg offers no authority, however, and the Court is aware of none, that would support imposing personal liability on state officials on the grounds that their counsel offered erroneous legal argument that a court accepted.

To the extent it is possible to characterize defendants, as opposed to the California Supreme Court, as having elected to treat Dannenberg differently, his equal protection claim still fails because the judicial decision provided defendants a rational basis for the determination to keep him incarcerated. Accordingly, Dannenberg's complaint must be dismissed, without leave to amend.

B. <u>Other defense arguments</u>

Defendants offer several other grounds for dismissal, none of which are persuasive.

1. *Immunity of Governor and Parole Board Members*

Defendants argue that Governor Schwarzenegger and the Board members named as defendants enjoy absolute quasi-judicial immunity for their decisions to grant or to deny parole. While that may be so, Dannenberg is not seeking to hold defendants liable for denying him parole, but instead for failing to release him when the Sixth District Court of Appeal reinstated the Board decision to *grant* him parole. Were his claim otherwise viable, quasi-judicial immunity would not be a bar.

2. *The Wardens' Authority*

Defendants contend that Warden Ayers, and his successor Warden Wong, cannot be responsible for failing to release Dannenberg because wardens "lack independent authority to make prison release decisions, as that is the parole board's responsibility." Motion at 7:8-9 (quoting *Brown v. California Department of Corrections*, 554 F.3d 747 (9th Cir. 2009). This argument ignores the fact that the Board had already ordered Dannenberg's release, and the Sixth District had reinstated that order. Accordingly, this argument would not, standing alone, foreclose Dannenberg's claims against Wardens Ayers and Wong.

3. *Class of one*

Defendants contend that a "class of one" equal protection claim does not lie where the challenged action involves "subjective and individualized" decisions to be made in the exercise of

official discretion. Again, defendants may be correct as a matter of general principle, but they continue to misconstrue the claim Dannenberg is making. Because Dannenberg's claim arises from defendants' failure to carry out a parole decision made in his favor and reinstated by the Sixth District, defendants' arguments regarding discretion in granting parole are misplaced.

### 4. *Qualified Immunity*

Defendants make a qualified immunity argument that is largely built on their prior argument that no "class of one" equal protection claim lies in the context of discretionary decisions. In light of the conclusion that there is no viable claim of a constitutional violation committed by defendants, the qualified immunity argument is moot.

### C. Individual liability

As noted above, the prior order required Dannenberg to allege facts showing how each named defendant "personally participated in the decision to treat him differently than other similarly situated persons, or . . . had both the personal authority and responsibility under state law to ensure his equal treatment, but failed to act." February 10, 2010, Order at 11:3-6. A reasonable inference was, and remains, that all of the state officials involved in this matter were at all times acting on the advice of counsel; that is to say, the decisions regarding whether or not to release Dannenberg were almost certainly made as a matter of legal analysis in conjunction with the attorney general's office. Even to the extent any other state officials had input into the decisions, they almost certainly were consulting closely with the attorney general's office.

That said, Dannenberg has now adequately shown, for pleading purposes at least, that Warden Ayers and Wong had the power and authority to carry out the Board's order upon its reinstatement by the Sixth District, and therefore could be potentially held liable for failing to do so, had the California Supreme Court not effectively ruled that no immediate obligation to release arose when the Sixth District ruled. Dannenberg has also shown that pursuant to California Penal Code § 5075(c), the Executive Officer of the Board is charged with exercising "all duties and functions necessary to insure that the responsibilities of the board are successfully discharged." As such, at

least at the pleading stage, there would also appear to be a basis to impose liability against defendants Hoshino and Monday, who were each the Board's Executive Officer during relevant time periods, were Dannenberg's claim otherwise viable.

As to Governor Schwarzenegger and Board Chairman James Davis, however, Dannenberg has shown nothing more than that they had some involvement in the process and that they did not respond to his counsel's written demands that he be released. While it is true that a failure to act can be wrongful *where there is a duty to act*, Dannenberg's counsel could not unilaterally create such a duty simply by sending letters. Accordingly, the claims against the Governor and Davis are subject to dismissal on this additional ground.

Finally, Dannenberg suggests that this motion does not address his claims against "Doe" defendants—unknown subordinate state employees who may have been involved in the decisions as to when and whether Dannenberg would be released. Dannenberg contends the case must proceed to discovery so that he can ascertain the identities of such persons and the roles they played. Given the conclusion above that Dannenberg has no viable claim against *any* state official, the discovery he seeks to determine whether individual liability might otherwise lie against specific individuals is moot.

## IV.  CONCLUSION

The motion to dismiss the Second Amended Complaint is granted, without leave to amend. The Clerk shall close the file.

Dated: 07/23/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE